UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ASHLEY MOGILLES et al. | CIVIL ACTION |
| VERSUS | NO. 23-7045 |
| MEMBERSELECT INSURANCE COMPANY et al. | SECTION: "G"(5) |

## ORDER AND REASONS

Before the Court is Plaintiffs Ashley Mogilles and Aleyea Mogilles (collectively, "Plaintiffs") Motion to Remand.[1] Plaintiffs argue that the case should be remanded because the amount in controversy requirement is not met.[2] Defendants Julia Henry and Stephen Henry (collectively, "Defendants") oppose the motion, contending that the amount in controversy requirement is met.[3] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the Motion to Remand.

## I. Background

This litigation arises out of a motor vehicle collision that occurred on November 12, 2022 on Westbank Expressway and Barataria Boulevard in Jefferson Parish, Louisiana.[4] Plaintiffs filed a petition for damages (the "Petition") against Defendants Memberselect Insurance Company ("Memberselect"), Auto Club Group Insurance Company ("Auto Club Group"), Julia Henry, and Stephen Henry in the Twenty-Fourth Judicial District Court for the Parish of Jefferson on October

---

[1] Rec. Doc. 6.

[2] *Id*. at 1.

[3] Rec. Doc. 7 at 1.

[4] *See* Rec. Doc. 1-2 at 3.

1

11, 2023.[5] According to the Petition, the vehicle operated by Plaintiff Ashley Mogilles collided with the vehicle operated by Defendant Julia Henry.[6] Further, the Petition alleges that Plaintiff Ashley Mogilles' minor child, Aleyea Mogilles, was a passenger in her vehicle when the collision occurred.[7] Plaintiffs brought a negligence claim against Defendant Julia Henry for striking the rear of the vehicle operated by Plaintiff Ashley Mogilles.[8] Plaintiffs also named Stephan Henry as a defendant, asserting that he is vicariously liable because Julia Henry was allegedly running an errand for him when the collision occurred.[9] Plaintiffs also named Memberselect and Auto Club Group as defendants, asserting that they are Defendant Stephan Henry's automobile insurer.[10] Plaintiffs seek damages for past and future physical pain and suffering, past and future mental pain and suffering, and past and future medical expenses, among other injuries.[11]

On November 22, 2023, Defendants Julia Henry and Stephan Henry removed the action to this Court, asserting subject matter jurisdiction under 28 U.S.C. § 1332.[12] Defendants Memberselect Insurance and Auto Club Group Insurance consented to removal.[13] In the Notice of Removal, Defendants aver that the parties are completely diverse because Plaintiffs are citizens of

---

[5] *Id*. at 2.

[6] *Id*. at 3.

[7] *Id.* at 3–4. Although the Petition and Plaintiffs' brief uses Aleyea and Aleya interchangeably, the Court will use Aleyea as that is the name consistently used in the first page of the Petition.

[8] *Id.*

[9] *Id.* at 4.

[10] *Id.*

[11] *Id.* at 4–5.

[12] Rec. Doc. 1. at 3.

[13] Rec. Doc. 1-4.

2

Louisiana, Defendants Julia Henry and Stephan Henry are citizens of Michigan, Memberselect and Auto Club Group are both incorporated in Michigan and maintain their principal place of business in Michigan.[14] Defendants acknowledge in the Notice of Removal that it is not facially apparent that the amount in controversy exceeds $75,000.[15] Instead, Defendants contend that the amount in controversy requirement is satisfied because Plaintiffs made pre-suit settlement demands on the insurance policy limit, which is $500,000 per occurrence and $250,000 per person.[16]

On December 12, 2023, Plaintiffs filed the instant motion to remand.[17] On December 19, 2023, Defendants opposed the motion.[18]

## II. Parties' Arguments

### A.  *Plaintiffs' Arguments in Support of Remand*

Plaintiffs argue that removal was improper because Defendants have not established that the amount in controversy requirement is met, as Defendants have not submitted adequate summary-judgment-type evidence that the value of Plaintiff's claim exceeds $75,000.[19] According to Plaintiffs, they demanded the policy limit in pre-suit negotiations with Defendants because it was "a matter of prudence, given that Defendants refused to disclose the limits of the insurance coverage available in this case."[20] Plaintiffs note that Defendants responded to one of their settlement offers by valuing the cases at $15,000 for Ashley Mogilles and $1,900 for Aleyea

---

[14] Rec. Doc. 1 at 3– 4.

[15] *Id.* at 5.

[16] *Id;* see Rec. Doc. 1-3.

[17] Rec. Doc. 6.

[18] Rec. Doc. 8.

[19] Rec. Doc. 6-1 at 1.

[20] *Id.* at 6.

3

Mogilles, which includes costs of $5,876 and $1,394.[21] Further, Plaintiffs contend that the disc injury Ashley Mogilles suffered does not require medical treatment exceeding $75,000 and they note that federal district courts in Louisiana have remanded cases back to state court when the plaintiff suffered a disc injury that did not require surgery.[22]

### B.    *Defendants' Arguments in Opposition*

In opposition, Defendants note that federal district courts in Louisiana have held that pre-suit settlement demands can be used as summary-judgment-type evidence to prove that the amount in controversy requirement has been met.[23] Defendants contend that since Plaintiffs demanded full policy limits in their pre-suit settlement demands, the amount in controversy requirement has been met, as Defendants' policy limits are $500,000 per occurrence and $250,000 per person.[24] Defendants also aver that Plaintiffs' post-petition, pre-removal oral settlement demand of $100,000 for Ashley Mogilles and $25,000 for Aleyea Mogilles can be used as summary-judgment-type evidence to satisfy the amount in controversy requirement.[25] Defendants point to *Leonard v. Sentry Select Ins. Co.*, in support of this argument.[26]

---

[21] *Id.*

[22] *Id.* at 7–8 (citing *Cole v. Mesilla Valley Trans.*, No. 16-841, 2017 WL 1682561, at *5 (M.D. La. Mar. 14, 2017 (Bourgeois, J.) (collecting cases)).

[23] Rec. Doc. 8 at 4–5 (citing *Creppel v. Fred's Stores of Tennessee, Inc*., No. 13-734, 2013 WL 3490927, at *3 (E.D. La. July 10, 2013) (Barbier, J.); *Carver v. Wal-Mart Store, Inc.* No. 08-42, 2008 WL 2050987, at *2 (M.D. La. May 13, 2008) (Noland, M.J.); *Fairchild v. State Farm Automobile Ins. Co.*, 907 F.Supp. 969, 971 (M.D. La. 1995) (Polozola, J.); *Williams v. Sentry Select Ins. Co*., No. 20-766, 2020 WL 1617291, at * 2–3 (E.D. La. Apr. 2, 2020) (Barbier, J)).

[24] *Id.* at 5.

[25] *Id.* at 5–6.

[26] *Id.* at 6 (citing *Leonard v. Sentry Select Ins. Co.*, No. 15-675, 2016 WL 1393382, at *1 (M.D. La. Mar. 11, 2016) (Bourgeois, M.J), *report and recommendation adopted*, No.15-675, 2016 WL 1369397 (M.D. La. Apr. 6, 2016) (Brady, J.)).

Defendants also contend that since they have proved by a preponderance of the evidence that the amount in controversy is satisfied, "the burden shifts to Plaintiffs to show 'to a legal certainty' that Plaintiffs cannot recover the jurisdictional amount."[27] Defendants note that Plaintiffs may do so by "'showing state procedural rules binding the plaintiffs to their pleadings, or (2) filing a binding stipulation or affidavit to that effect with their petition.'"[28] Defendants contend that Plaintiffs cannot make the first showing because Louisiana law prohibits plaintiffs from pleading a specific amount of damages in the pleadings.[29] They also contend that Plaintiffs have not filed a binding stipulation or affidavit stating that Plaintiffs will not seek more than $75,000.[30]

### **III. Legal Standard**

A defendant may remove a state civil court action to federal court if the federal court has original jurisdiction over the action.[31] A federal court has subject matter jurisdiction over an action "where the matter in controversy exceeds the sum or value of $75,000" and the action "is between citizens of different states."[32] The removing party bears the burden of demonstrating that federal jurisdiction exists.[33]

---

[27] *Id.* at 7.

[28] *Id.* (citing *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995)).

[29] *Id.* at 8.

[30] *Id.*

[31] 28 U.S.C. § 1441(a); *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 34 (2002).

[32] 28 U.S.C. § 1332(a)(1).

[33] *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that "removal statute[s] should be strictly construed in favor of remand."[34] Remand is appropriate if the Court lacks subject matter jurisdiction, and "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."[35]

Pursuant to Fifth Circuit precedent, a removing defendant's burden of showing that the amount in controversy is sufficient to support federal jurisdiction differs depending on whether the plaintiff's complaint alleges a specific amount of monetary damages.[36] When the plaintiff alleges a damage figure in excess of the required amount in controversy, "that amount controls if made in good faith."[37] If the plaintiff pleads damages less than the jurisdictional amount, this figure will also generally control, barring removal.[38] "Thus, in the typical diversity case, the plaintiff remains the master of his complaint."[39]

Louisiana law ordinarily does not allow a plaintiff to plead a specific amount of damages.[40] A plaintiff is, however, permitted to make "a general allegation that the claim exceeds or is less than" a particular amount if making such an allegation is necessary to establish the lack of jurisdiction of federal courts due to insufficiency of damages.[41] When, as here, the plaintiff has

---

[34] *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

[35] *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000) (citing *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988)).

[36] *See Allen*, 63 F.3d at 1335.

[37] *Id.* (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).

[38] *Id.*

[39] *Id.*

[40] *See* La. Code Civ. P. art. 893.

[41] *Id.*

alleged an indeterminate amount of damages, the Fifth Circuit requires the removing defendant to prove by a preponderance of the evidence that the amount in controversy exceeds $75,000.[42] A defendant satisfies this burden either "(1) by demonstrating that it is facially apparent that the claims are likely above $75,000, or (2) by setting forth facts in controversy—preferably in the removal petition, but sometimes by affidavit—that support a finding of the requisite amount."[43] The defendant must do more than point to a state law that might allow the plaintiff to recover more than the jurisdictional minimum; the defendant must submit evidence that establishes that the actual amount in controversy exceeds $75,000.[44] Finally, the jurisdictional facts that support removal "must be judged at the time of the removal, and any post-petition affidavits are allowable only if relevant to that period of time."[45]

### IV. Analysis

Plaintiffs argue that the case should be remanded because Defendants have not shown by a preponderance of the evidence that the amount in controversy exceeds $75,000.[46] Defendants counter that Plaintiffs' pre-suit settlement demands of Defendants' policy limits and their post-petition, pre-removal oral settlement demand of $100,000 for Ashley Mogilles shows that the amount in controversy requirement has been met.[47] The parties do not contest that there is complete

---

[42] *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 882 (5th Cir. 2000); *see also Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999); *Allen*, 63 F.3d at 1335.

[43] *Simon*, 193 F.3d at 850 (quoting *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295 (5th Cir. 1999)); *see also Allen*, 63 F.3d at 1335.

[44] *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995).

[45] *Allen*, F.3d at 1335.

[46] Rec. Doc. 6-1.

[47] Rec. Doc. 8. Defendants note that if the Court can exercise diversity jurisdiction over Ashley Mogilles claim, then the Court may exercise supplemental jurisdiction over Aleyea Mogilles' claim, as the parties agree that her claim does not exceed $75,000. *Id.* at 6–7 (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546 (2005)). The Court agrees and therefore only considers whether Ashley Mogilles' claim exceeds $75,000.

diversity of citizenship between Plaintiffs and Defendants.[48] Neither do they contest that it is not facially apparent from the petition that the value of Plaintiffs' claims exceed $75,000.[49] Therefore, at issue here is whether the summary-judgment-type evidence Defendants have submitted satisfies the amount in controversy requirement for the Court to confer subject matter jurisdiction pursuant to 28 U.S.C. § 1332

A.   *Whether a Preponderance of Defendants' Evidence Shows the Amount in Controversy is Met*

The Fifth Circuit has held that "in making our determination as to the amount in controversy pursuant to [Section] 1332, the damages that [courts] may consider include only those damages claimed at the time of removal."[50] The Fifth Circuit has definitively held that a settlement demand letter may be considered an "other paper" which commences the running of the period for filing a notice of removal under 28 U.S.C. Section 1446(b), but it has not conclusively addressed the issue of whether a pre-petition settlement demand letter can be considered as relevant evidence of the amount in controversy.[51] Federal district courts in Louisiana have held that "it can be inferred from several Fifth Circuit cases that such a practice is permissible when the settlement offer reflects an honest assessment of the value of the plaintiff's claims."[52] Further, federal district

---

[48] *See* Rec. Doc. 6-1; Rec. Doc. 8.

[49] Rec. Doc. 6-1 at 4; Rec. Doc. 8 at 3.

[50] *Pollet v. Sears Roebuck & Co.*, No. 01-31309, 2002 WL 1939917, at *1 (5th Cir. 2002).

[51] *McGlynn v. Huston*, 693 F.Supp.2d 585, 595 n.8 (M.D. La. 2010) (Brady, J). *See Addo v. Globe Life and Acc. Ins. Co.*, 230 F.3d 759, 762 (5th Cir. 2000) (holding that "a post-complaint letter, which is not plainly a sham, may be "other paper" under Section 1446(b) is consistent with the purpose of the removal statute to encourage prompt resort to federal court when a defendant first learns that that plaintiff's demand exceeds the federal jurisdictional limit.").

[52] *McGlynn*, 693 F.Supp.2d at 595 n.8 (citing *Pollet*, 2002 WL 1939917; *Hartford Ins. Grp. v. Lou-Con Inc.*, 293 F.3d 908 (5th Cir. 2002); *Wilson v. Belin*, 20 F.3d 644, 651 n.8 (5th Cir. 1994); *Boutin v. United Specialty Ins. Co.*, No. 20-1049, 2020 WL 7488307, at *3 (W.D. La. Dec. 14, 2020) (Whitehurst, M.J) (citing *McGlynn*, 683

courts in Louisiana have also recognized that settlement demands are "valuable evidence" in determining the amount in controversy.[53] Some courts have found that a settlement demand alone, without supporting medical records and details of the medical treatment, is sufficient to support removal jurisdiction where the plaintiff does not argue in opposition to removal that the settlement demand was not an honest assessment of the damages.[54] However, Louisiana federal courts have considered other evidence alongside a settlement demand to determine whether the amount in controversy exceeds $75,000.[55]

Here, Plaintiffs have made three pre-removal settlement demands to Defendants. First, in a settlement demand letter dated April 24, 2023, Plaintiffs' counsel wrote: "I will recommend that my client release your insured for the policy limits."[56] In the same letter, Plaintiffs' counsel noted that Plaintiffs have spent $506 on medical care thus far.[57] Plaintiffs' counsel also cited to Louisiana

---

F.Supp.2d at 595 n.8 (internal citations omitted); *Woods v. Patrons Oxford Ins. Co.*, No. 22-898, 2022 WL 2965923, at *3 (E.D. La. July 27, 2022) (Milazzo, J.)).

[53] *Fairchilds*, 907 F.Supp. at 971 (citing *Wilson,* 20F.3d at 651 n.8).

[54] *Baxter v. Nat'l Safety Council*, No. C-05-0752C, 2005 WL 2219369, at *1 (W.D. Wash. 2005); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002); *Fairchilds*, 907 F.Supp. 969 at 970 (the plaintiff's petition alleged "severe injury" and plaintiff's settlement demand letter itemized the damages she sought for each type of injury to arrive at the $110,000 settlement demand).

[55] *See Woods*, 2022 WL 2965923at *2 (considered the plaintiff's pre-suit settlement demand, Plaintiff's medical records, Plaintiff's refusal to stipulate to damages less than $75,000, and a quantum survey of similar tort cases from Louisiana); *Creppel*, 2013 WL 3490927, at *4 ("the fact that the settlement demand letter in this case … extensively addresses Mr. Creppel's injuries, treatment, and medical expenses, with references to supporting documentation, leads the Court to believe it represents an honest assessment of Mr. Creppel's damages"); *Carver*, 2008 WL 2050987, at *3 ("[t]he fact that the settlement offer contains (4) pages addressing Carver's injuries, treatment, and medical expenses in detail (with references to supporting records and billing) cautions against finding that the letter was not an honest assessment of her damages.").

[56] Rec. Doc. 8-1 at 2.

[57] *Id.* at 1.

intermediate appellate court decisions listing the damages those courts have awarded to plaintiffs that have suffered soft-tissue injury.[58] These damages ranged from $2,500 to $7,500.[59]

Second, Plaintiffs' counsel sent Defendants another settlement demand letter dated September 26, 2023 and again wrote "I will recommend that my client release your insured for the policy limits."[60] Plaintiffs' counsel provided an update that Plaintiff Ashley Mogilles had spent $5,876 in medical care so far and it was expected that she would spend another $5,150 at Crescent City Surgical Care for treatment related to her lumbar epidural L4/5 and right C5 transforaminal epidural, which her neurosurgeon recommended.[61] Further, Plaintiffs' counsel summarized that Plaintiff Ashley Mogilles suffered cervical strain, lumbar strain, post traumatic headaches, uncovertebral joint hypertrophy, and a disc herniation protrusion, among other conditions.[62] Plaintiffs' counsel also noted that Ashley Mogilles received an MRI, and the report indicated that she "sustained a mild discogenic changes to C2-3, C3-4, C4-5, C5-6, C6-7, mild right neural foraminal stenosis, … and a disc herniation protrusion to C4-5, C5-6."[63]

Third, on October 30, 2023, after Plaintiffs filed the petition in state court but before Defendants removed the case to this Court, it appears that Plaintiffs' counsel, Mr. LaSalle, "spoke[]" with Nancy J. Gwaltney, Senior Claims Specialist at Michael J. Curtin & Associates

---

[58] *Id.* at 2 (citing *Joseph v. Houston*, 04-250 (La. App. 5 Cir. 10/12/04), 886 So. 2d 1133; *Williams v. Roberts*, 05-852 (La. App. 5 Cir. 4/11/06), 930 So. 2d 121; *Sanchez v. Dubuc*, 12-526 (La. App. 5 Cir. 2/21/13), 110 So. 3d 1140).

[59] *Id.*

[60] Rec. Doc. 8-2 at 2.

[61] *Id.* at 1–2.

[62] *Id.* at 2.

[63] *Id.*

10

about settlement.[64] Nancy J. Gwaltney sent an email to Katherine Allen, a representative of Defendant Auto Club Group, memorializing Mr. LaSalle's offer to settle if Defendants paid $100,000 for Ashley Mogilles.[65] Nancy J. Gwaltney then sent an email to Mr. LaSalle counter-offering $15,000 for Ashley Mogilles.[66]

### 1. The First Two Settlement Demand Letters

Plaintiffs' first two settlement demands of Defendants' policy limits do not reflect an honest assessment of the value of Plaintiffs' claims. Although not worded verbatim that their settlement demand was not an honest assessment of the value of their claim, Plaintiffs here admit that they "demanded the policy limits as a matter of prudence, given that Defendants refused to disclose the limits of the insurance coverage available in this case."[67] Defendants do not dispute Plaintiffs' allegation that they did not disclose their policy limits to Plaintiffs when asked.[68] On this point, the instant case here is distinguishable from *Creppel*, *Carver*, and *Williams*, where the respective presiding judges in those cases found in part that the plaintiffs' settlement demands were honest assessments of the value of their claims because the plaintiffs did not state that they were not.[69]

---

[64] Rec. Docs. 8-4, 6-2.

[65] Rec. Doc. 8-4.

[66] Rec. Doc. 6-2.

[67] Rec. Doc. 6-1 at 9.

[68] *See* Rec. Doc. 8.

[69] *Williams*, 2020 WL 1617291, at *3 ("In his motion to remand, Plaintiff fails to argue that his settlement demand was ''inflated or that it was not an honest assessment of [his] damages.'"); *Carver*, 2008 WL 2050987, at *3 ("In the present case, Carver has not argued in her motion to remand that the settlement demand submitted to defense counsel on October 17, 2007 was inflated or that it was not an honest assessment of her damages."); *Creppel*, 2013 WL 3490927, at *4 ("Plaintiffs, like the plaintiff in *Carver*, have not argued in their motion to remand that the settlement demand was inflated or did not constitute an honest assessment of Mr. Creppel's damages.").

Plaintiffs' counsel's representations as to the medical care that Ashley Mogilles has received so far further support that Plaintiffs' demand of the policy limits is not an honest assessment of the value of their claim. As discussed above, the April 24, 2023 letter states that Plaintiffs have incurred $506 in medical costs and the September 26, 2023 letter states that Ashley Mogilles has spent $5,876 in medical care and she is expected to spend another $5,150 at Crescent City Surgical Care for treatment related to her lumbar epidural L4/5 and right C5 transforaminal epidural.[70] There is a wide gap between Plaintiffs' actual and anticipated medical costs and the policy limits, which are $250,000 per person and $500,000 for the collision.

In addition, the settlement demand letters Plaintiffs sent to Defendants do not indicate that Plaintiffs are scheduled for surgery for their alleged injuries. Ashley Mogilles' anticipated treatment at Crescent City Surgical Center for her "lumbar epidural L4/5 and right C5 transforaminal epidural" are not surgeries but rather, injections.[71] Federal district courts in Louisiana have found that the amount in controversy requirement is met when there is a surgical recommendation and not met when there is no surgical recommendation.[72] Another Section of this Court has summarized that "the distinguishing factor between cases finding remand to be appropriate and cases denying remand is the presence of a surgical recommendation."[73] In cases where Louisiana federal and state courts have considered a plaintiff's injuries that include

---

[70] Rec. Doc 8-1 at 1; Rec. Doc. 8-2 at 1.

[71] Rec. Doc. 8-2 at 1,2. Plaintiffs state in their motion that Ashley Mogilles' neurosurgeon "recommended injection intervention." Rec. Doc. 6-1 at 2.

[72] *Compare Coco v. DG Louisiana LLC*, No. 6:22-cv-00834, 2022 WL 4546735, at *2 (W.D. La. Sept. 28, 2022) (Ayo, M.J.); *Fradella v. Wal-Mart Stores, Inc.*, No.04-1230, 2004 WL 2297474, at *3 (E.D. La. Oct. 13, 2004) (Berrigan, J.) with *Espadron v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 3168417, at *3 (E.D. La. Aug. 9, 2010) (Zainey, J); *Hebert v. Hanco Nat. Ins. Co.*, Nos. 07-362, 08-397-C, 2009 WL 255948, at *4–5 (M.D. La. Feb. 3, 2009) (Tyson, C.J.).

[73] *Espadron*, 2010 WL 3168417, at *3.

herniated disc and lumbar strain arising from a motor vehicle collision, these courts have found that the plaintiffs' claims do not exceed $75,000. In *Hebert v. Hanco National Insurance Company*, a judge in the Middle District of Louisiana ordered remand, reasoning that "evidence that the plaintiff suffers from a herniated disc, without any recommendation for surgery, does not satisfy defendants' burden of proving that the amount in controversy exceeded $75,000 at the time of removal."[74] The presiding judge pointed to cases where Louisiana intermediate appellate courts have affirmed trial court awards of damages less than $75,000 when a plaintiff suffered a herniated disc injury.[75] For instance, in *Strain v. Indiana Lumberman's Mutual Insurance Company*, the Louisiana First Circuit Court of Appeal affirmed the jury's award of $15,685.49 in past medical expenses and $10,000 in general damages for the plaintiff, whose car was rear-ended by the defendant tortfeasor's car and was diagnosed with lumbar strain, herniated lumbar disc, and mild disc protrusion, among other conditions.[76]

Another Section of this Court recently ordered a factually analogous case to the instant case here to be remanded after finding that a preponderance of the defendants' evidence did not show that the value of the plaintiff's claim exceeded $75,000 in a motor vehicle collision.[77] In *Woods v. Patrons Oxford Insurance Company*, the presiding judge reviewed the plaintiff's pre-suit settlement demand for the insurance policy limits of $500,000, the plaintiff's medical records, the plaintiff's refusal to stipulate to damages less than $75,000, and a quantum survey of similar

---

[74] *Hebert*, 2009 WL 255948, at *5.

[75] *Id.* at *4 (citing *McKnight v. McCastle*, 2004-2437 (La. App. 1 Cir. 12/22/05), 928 So. 2d 45; *Strain v. Indiana Lumberman's Mutual Ins. Co.*, 2000-2720, (La. App. 1 Cir. 2/20/02), 818 So. 2d 144).

[76] *Strain*, 818 So.2d at 146, 148, 151.

[77] *Woods*, 2022 WL 2965923, at *3–4.

tort cases from Louisiana.[78] The plaintiff had demanded the policy limits even after being informed by the defendants that the policy limit was $500,000.[79] The presiding judge found that the plaintiff's medical records indicating $7,560 in costs and less than a year of conservative therapy for a herniated disc, an MRI, and a few visits to an orthopedic specialist were "so discordant" with the $500,000 policy limit the plaintiff demanded that it could not be an honest assessment of the value of the plaintiff's claims.[80] Thus, the presiding judge ordered remand.[81]

The Fifth Circuit has broadly remarked that a "plaintiff's settlement offer is ordinarily less than the damages plaintiff expects to receive if victorious at trial, because the offer is obviously discounted by the risk of an outright loss at trial."[82] However, empirically, juries have awarded less than $75,000 in Louisiana cases where the plaintiff suffered similar injuries to the injuries Ashley Mogilles suffered here.[83] Further, other courts, including another section of this Court, have recognized that "[i]t is common for a settlement offer to be more about puffing and posturing than proof of anything, much less the value of the claims and the amount in controversy. They often overstate the value of the claim."[84]

---

[78] *Id.* at *2.

[79] *Id.* at *3 ("Defendants show that counsel for Plaintiff was informed on two different occasions that Patrons Oxford Insurance issued a policy to Mr. Merchant with a combined single liability limit of $500,000").

[80] *Id.* at *3–4.

[81] *Id.* at *4.

[82] *Pollet*, 2002 WL 1939917, at *2 n. 5.

[83] *Strain.*, 818 So. 2d 144; *Vaselle v. Wal-Mart Stores, Inc.*, 01-0452 (La. 11/28/01), 801 So. 3d 331 (Louisiana Supreme Court affirmed the jury's award of $70,000 for the plaintiff's injuries which included lumbar disc protrusions); *Boyette v. United Serv. Auto.*, 00-1918 (La. 4/3/01), 783 So. 2d 1276 (Louisiana Supreme Court affirmed the jury's general damages award of $50,000 for the neck and back injuries the Plaintiff sustained after the plaintiff was rear-ended by a van). *See also* Colbey Blake Reagan, *Louisiana Personal Injury Awards*, 48 LOYOLA L. REV. 819, 886–906 (2002) (collecting cases).

[84] *Woods*, 2022 WL 2965293, at *3 (citing *Martinez v. Sarratt*, Civil Action No. 3:20-cv-0744, 2020 WL 1892357, at * 5 (D. S.C. Apr. 16, 2020)).

### 2. The Third Settlement Attempt

It is also unclear from Plaintiffs' third oral settlement offer of $100,000 for Ashley Mogilles, whether it is an honest assessment of the value of their claims. The email that Defendants attached as evidence of Plaintiff's third settlement offer indicates that these settlement discussions were oral between Nancy J. Gwaltney and Plaintiffs' counsel.[85] Nancy J. Gwaltney is not a counsel of record for any party here. She appears to be associated with Defendant Auto Club Group, as she sent an email to Katherine Allen of Auto Club Group. Defendants Julia Henry and Stephan Henry do not share the same counsel of record as Auto Club Group. Thus, any knowledge Defendants Julia Henry and Stephen Henry's counsel of record may have about the value of Plaintiffs' claims is subjective, as he did not even speak with Plaintiffs' counsel of record when Plaintiffs' counsel proposed $100,000 to settle Ashley Mogilles' claim. As such, the Court does not have a record of what Plaintiffs' counsel may have relayed to Nancy J. Gwaltney, including the reasons why they were willing to settle the case at $100,000 for Ashley Mogilles. In contrast, the presiding judges in the district court cases Defendants cite evaluated a written settlement demand letter.[86] Further, as discussed above, the lack of a surgery recommendation has been decisive for many Louisiana federal courts in deciding whether to remand.

### V. Conclusion

A preponderance of Defendants' evidence does not reflect that the value of Plaintiffs' claims exceed $75,000 at the time of removal, as Plaintiff Ashley Mogilles' medical treatment so

---

[85] *See* Rec. Doc. 8-4 at 1.

[86] *Fairchilds*, 907 F.Supp. at 970 (the plaintiff's settlement demand letter itemized $10,000 for mental anguish of potential injuries to unborn child, $35,000 for injury to left knee, and so forth to arrive at the $110,000 total); *Creppel*, 2013 WL 3490927, at *3 (evaluated the plaintiff's pre-petition settlement demand letter, which "extensively address[ed] Mr. Creppel's injuries, treatment, and medical expenses, with references to supporting documentation"); *Carver*, 2008 WL 2050987, at *3(the plaintiff sent the defendant a 4 page letter addressing the plaintiff's injuries, treatment, and medical expense in detail and referenced supporting records and billing).

far is drastically lower than the insurance policy limits she sought during settlement negotiations. Plaintiffs' counsel also stated that Plaintiffs requested the full policy limits as a matter of prudence since Defendants did not reveal the policy limits. While Defendants cite cases where the plaintiffs suffered comparable injuries to the injuries Ashley Mogilles suffered here where courts have found that the amount in controversy is met, there are also many cases where Louisiana courts have held that disc injuries, conservative therapy treatment, and lack of a surgery recommendation did not meet the amount in controversy requirement. As the Fifth Circuit has instructed, "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."[87]

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs Ashley Mogilles and Aleya Mogilles' Motion to Remand[88] is **GRANTED**.

**IT IS FURTHER ORDERED** that the case is hereby remanded to the Twenty-Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana for further proceedings.

**NEW ORLEANS, LOUISIANA**, this 28th day of February, 2024.

                                                  **NANNETTE JOLIVETTE BROWN**
                                                  **CHIEF JUDGE**
                                                  **UNITED STATES DISTRICT COURT**

---

[87] *Acuna*, 200 F.3d at 339 (citation omitted).

[88] Rec. Doc. 6.